UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETITION OF H&S CLUB OMAHA, INC., | 25-civ-_____ |
| RELATED TO: | Civil Action No.: 41-1395 |
| UNITED STATES OF AMERICA, | **PETITION OF H&S CLUB OMAHA, INC. FOR THE DETERMINATION OF REASONABLE FINAL LICENSE FEES** |
| Plaintiff, | |
| v. | |
| AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, | |
| Defendant. | |
| RELATED TO: | Civil Action No.: 64-3787 |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| BROADCAST MUSIC, INC. and RKO GENERAL, INC., | |
| Defendants. | |

**PETITION OF H&S CLUB OMAHA, INC. FOR THE
DETERMINATION OF REASONABLE FINAL LICENSE FEES**

1.      Petitioner H&S Club Omaha, Inc. ("Club Omaha") is a for-profit, Nebraska corporation that is in the adult entertainment business, specifically offering live performances by dancers while recorded music is played. The Respondents in this action are the two largest performing rights organizations ("PROs") in the United States: the American Society of Composers, Authors and Publishers ("ASCAP") and Broadcast Music, Inc. ("BMI"). Each of

1

ASCAP and BMI are subject to antitrust consent decrees entered in this judicial district stemming from their pooling of interests in vast amounts of copyrighted musical works for which they set prices. Club Omaha files this Petition pursuant to § IX(A) of the ASCAP consent decree and § XIV of the BMI consent decree, respectively, for the determination of reasonable license fees and terms from each of ASCAP and BMI applicable to Club Omaha's use of compositions in those PROs' repertories (the "Rate Court Petition").

## INTRODUCTION

2. Respondent ASCAP entered into a consent decree with the Department of Justice in 1942, which has since been amended. *United States v. ASCAP,* 1940-1943 Trade Cas. ¶ 56,104 (S.D.N.Y. 1941), *as amended by* No. 42-245, 1950 WL 42273, at *1 (S.D.N.Y. Mar. 14, 1950) (1950-51 Trade Cas. ¶ 62,595), *as amended by* 1960 Trade Cas. ¶ 69,612 (S.D.N.Y. Jan. 7, 1960), *as amended by* No. 41-1395 (WCC), 2001 WL 1589999, at *1 (S.D.N.Y. June 11, 2001) (the "ASCAP Decree"). The ASCAP Decree restricts ASCAP's conduct and entitles entities making public performances of the ASCAP repertory to seek a judicial determination of reasonable ASCAP license fees under § IX of the ASCAP Decree.

3. Respondent BMI entered into a consent decree with the Department of Justice in 1966, which has since been amended. *United States v. Broad. Music, Inc.,* 1966 Trade Cas. (CCH) ¶¶ 71,941, 83,323 (S.D.N.Y. 1966), *amended by* No. 64-civ-3787, 1994 WL 901652, at *1 (S.D.N.Y. Nov. 18, 1994) (1996-1 Trade Cas. (CCH) ¶ 71,378) (the "BMI Decree"). The BMI Decree restricts BMI's conduct and entitles entities making public performances of the BMI repertory to seek a judicial determination of reasonable BMI license fees under § XIV of the BMI Decree.

4. Petitioner Club Omaha is a long time licensee of both ASCAP and BMI for the license to play units established from each PRO's respective repertoires. Club Omaha has recently sought to negotiate new fee licenses with each PRO named herein. By this Petition, Club Omaha seeks determinations of reasonable license rates and terms against each of ASCAP and BMI for their respective repertories. Specifically, Club Omaha seeks reasonable rates and terms for "Music License" from BMI and from ASCAP for a "General License Agreement," for the one year term and renewals thereof. The licenses requested are to allow public performances of all ASCAP-affiliated and BMI-affiliated musical compositions for which an ASCAP and/or BMI license is required for establishments such as Club Omaha at the licensed premises.

## PARTIES

5. Club Omaha a for-profit corporation existing under the laws of Nebraska, with a principal office address of 2607 S. 120th Street, Omaha, Nebraska. Club Omaha is a live performance venue featuring female dancers who dance while recorded music is being played.

6. ASCAP is an unincorporated membership association operating as a music PRO claiming to license the musical works of more than 850,000 composers, songwriters and publishers,[1] with its principal office located at 250 West 57th Street, New York City, New York 10107.

7. BMI is a Delaware corporation operating as a music PRO on a non-profit-making basis that claims to license the musical works of approximately 1.2 million composers, songwriters, and publisher affiliates (with a repertory including more than 18.7 million musical

---

[1] *About Us,* ASCAP, https://www.ascap.com/about-us.

works),[2] with its principal office located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

## JURISDICTION

8. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1337 because the proceedings that gave rise to each of the ASCAP Decree and the BMI Decree were brought pursuant to federal antitrust laws. *See, e.g., ASCAP,* 2001 WL 1589999, at *1 ("This Court has jurisdiction of the subject matter hereof and of all parties hereto. The Complaint states a claim upon which relief may be granted against ASCAP under Section 1 of the Sherman Act, 15 U.S.C. § 1."); *see also BMI,* No. 64-Civ-3787, at *1 (noting "[t]his Court has jurisdiction of the subject matter of this action and of the parties . . . under Sections 1 and 2 of the Act of Congress of July 2, 1890").

9. Under § IX(A) of the ASCAP Decree, this Court has continuing jurisdiction over ASCAP to determine reasonable license fees and terms governing the public performance of musical works in the ASCAP repertory by music users such as Club Omaha. Club Omaha invokes that jurisdiction in seeking a determination of reasonable ASCAP rates and terms for licenses.

10. Likewise, under § XIV of the BMI Decree, this Court has continuing jurisdiction over BMI to determine reasonable license fees and terms governing the public performance of musical works in the BMI repertory by music users such as Club Omaha. Club Omaha invokes that jurisdiction in seeking a determination of reasonable BMI rates and terms for licenses.

11. Before the Music Modernization Act (Pub. L. 115-264, title I, § 104, Oct. 11, 2018, 132 Stat. 3726) (the "MMA") was enacted in 2018, petitions to determine rates and terms under each of the ASCAP Decree and BMI Decree were required to be filed in the Southern District of

---

[2] *BMI Member FAQs,* BMI, https://www.bmi.com/faq/category/about.

4

New York and referred to the Judge having jurisdiction over the ASCAP Decree and BMI Decree, respectively. In practice, therefore, Judge Denise Cote handled petitions involving ASCAP, and Judge Louis Stanton handled petitions involving BMI.

12. The MMA changed the assignment system for ASCAP and BMI "Rate Court" petitions. Rather than automatically assigning petitions to Judge Cote and Judge Stanton, the new law specifies that each rate court petition "shall be . . . randomly assigned to a judge" in the Southern District of New York. 28 U.S.C. § 137(b). The law further prohibits assigning a petition to "a judge to whom continuing jurisdiction over any performing rights society consent decree is assigned or has previously been assigned" (in other words, Judges Cote and Stanton). *Id.* The new law thus eliminates the pre-MMA requirement that ASCAP and BMI Rate Court petitions proceed separately before different judges.

13. In accordance with these MMA provisions, Club Omaha files this Rate Court Petition against both ASCAP and BMI. Under the MMA, Club Omaha's application cannot be assigned to Judge Cote or Judge Stanton. *Id.* But any other judge is eligible, other than "a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application." *(id.)*

## FACTS PERTINENT TO THE PETITION

14. For May 15, 2024 to May 14, 2025, for their occupancy total of 286, ASCAP charged Club Omaha $16.69 for the first 75 occupants, $14.77 for the next 75 occupants, $11.82 for the next 100 occupants, and $8.85 for the next 39 occupants, a total of $3,886.90.

15. Club Omaha has been a BMI licensee since June 2019 with the initial one year term renewing annually. BMI attempted to collect licensing fees from two separate entities at the same

address occupied by Petitioner, when the business with account number 81153062 (which is not petitioners account number) had long since vacated the property.

16. BMI's current annual rate to Club Omaha is $4,457.50 consisting of a minimum fee plus an additional amount based on additional occupants.

17. Club Omaha has been on ASCAP licensee since May 2019 with the initial term being renewed annually.

18. ASCAP's current annual "minimum fee" to Club Omaha is $1,285.00 for 2025 with an additional amount due based on "additional occupants."

19. Petitioner's counsel contacted Respondents several times prior to filing this action, requesting a reasonable explanation for their posted rates for adult entertainment establishment.

20. Neither BMI nor ASCAP, to date, have proffered any specific fee explanation for their respective fees charged Club Omaha for the License Terms.

21. Club Omaha is unwilling to pay the stated fee for the artificial class of establishment which BMI and ASCAP have designated for "adult entertainment." Club Omaha and BMI and/or ASCAP have been unable to reach an agreement concerning reasonable fees for the licenses to the BMI/ASCAP repertory requested by Club Omaha. It has been more than 60 days since Club Omaha provided BMI/ASCAP with its written request for a license under § IX(A) of the ASCAP Decree, and under XIV(A) of the BMI Decree.

## **BACKGROUND**

22. Respondents were investigated by the Department of Justice in the 1930's and in 1942 ASCAP entered into a Consent Decree which has been repeatedly modified, revised and amended the latest as of June 11, 2001 and BMI entered into a Consent Decree which was amended as of 1994 and the Court has maintained continuing jurisdiction.

A. **The ASCAP Decree**

23. On June 11, 2001, the United States District Court for the Southern District of New York ("SDNY") by Judge William C. Conner, upon motion of the parties to "amend the Amended Final Judgment" on "consent," entered a Second Amended Final Judgment ("SAFJ") against ASCAP in *United States v. American Society of Composers and Publishers*, (Civ. 41-1395).

24. The following provisions of the SAFJ are relevant here:

   a) The Consent Decree defines a "Blanket License":

   "Blanket License" means a non-exclusive license that authorizes a music user to perform ASCAP music, <u>the fee for which does not vary depending on the extent to which the music user in fact performs ASCAP music</u>. [Emphasis Supplied]

   b) The Consent Decree defines "similarly situated" as:

   "Similarly situated" means music users or licensees in the same industry that perform ASCAP music and that <u>operate similar businesses and use music in similar ways and with similar frequency</u>; factors relevant to determining whether music users or licensees are similarly situated include, but are not limited to, the nature and frequency of musical performances, ASCAP's cost of administering licenses, whether the music users or licensees compete with one another, and the amount and

7

source of the music users' revenue. [Emphasis Supplied]

c) The Consent Decree prohibits ASCAP from:

**Prohibited Conduct.** ASCAP is hereby enjoined and restrained from:

Entering into, recognizing, enforcing or claiming any rights under any license for rights of public performance <u>which discriminates in license fees or other terms and conditions between licensees similarly situated.</u> [Emphasis Supplied]

. . . .

Asserting or exercising any right or power to restrict from public performance by any licensee of ASCAP any work <u>in order to extract additional consideration for the performance</u> thereof, or for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such work; nothing in this Section IV(F) shall be construed to prevent ASCAP, when so directed by the member in interest in respect of a work, from restricting performances of a work in order reasonably to protect the work against indiscriminate performances, or the value of the public

        performance rights therein, or the dramatic or "grand" performing rights therein, or to prevent ASCAP from restricting performances of a work so far as may be reasonably necessary in connection with any claim or litigation involving the performing rights in any such work. [Emphasis Supplied]

    d)     The Consent Decree requires ASCAP:

        ASCAP shall use its <u>best efforts to avoid any discrimination among the various types of licenses offered to any group of similarly situated music users</u> that would deprive those music users of a genuine choice among the licenses offered, or of the benefits of any of those types of licenses. The terms and requirements of any license shall be designed to avoid imposing· any unreasonable burdens or costs on licensees or ASCAP. [Emphasis Supplied]

25.     Article XIV:

    (A) Subject to all provisions of this Final Judgment, defendant shall, within ninety (90) days of its receipt of a written application from an applicant for a license for the right of public performance of any, some or all of the compositions in defendant's repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when defendant advises the applicant of

9

the fee which it deems reasonable, the applicant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall, upon receipt of notice of the filing of such application, promptly give notice thereof to the Assistant Attorney General in charge of the Antitrust Division. If the parties are unable to agree upon a reasonable fee within ninety (90) days from the date when defendant advises the applicant of the fee which it deems reasonable and no such filing by applicant for the determination of a reasonable fee for the license requested is pending, then defendant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall promptly give notice of its filing of such application to the Assistant Attorney General in charge of the Antitrust Division. In any such proceeding, defendant shall have the burden of proof to establish the reasonableness of the fee requested by it. Should defendant not establish that the fee requested by it is a reasonable one, then the Court shall determine reasonable fee based upon all the evidence. Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the compositions in defendant's repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding;

(B) When an applicant has the right to perform any compositions in defendant's repertory pending the completion of any negotiations or proceedings provided for in Subsection (A) hereof, either the applicant or defendant may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee. It is the purpose of this provision that an interim fee be determined promptly, and without prejudice as to the final determination of what constitutes a reasonable fee. It is further intended that interim fee proceedings be completed within 120 days of the date when application is made to fix an interim fee, subject to extension at the request of defendant or the applicant only in the interest of justice for good cause shown. If the Court fixes such interim fee, defendant shall then issue and the applicant shall accept a license providing for the payment of a fee at such interim rate from the date the applicant requested a license. If the applicant fails to accept such license or fails to pay the interim fee in accordance therewith, such failure shall be ground for the dismissal of its application. Where an interim license has been issued pursuant to this Subsection (B), the reasonable fee finally

determined by this Court shall be retroactive to the date the applicant requested a license;

(C) When a reasonable fee has been finally determined this Court, defendant shall be required to offer a license at a comparable fee to all other applicants similarly situated who shall thereafter request a license of defendant, but any license agreement which has been executed without any Court determination between defendant and another applicant similarly situated prior to such determination by the Court shall not be deemed to be in any way affected or altered by such determination for the term of such license agreement;

(D) Nothing in this Article XIV shall prevent any applicant from attacking in the aforesaid proceedings or in any other controversy the validity of the copyright of any of the compositions in defendant's repertory nor shall this Judgment be construed as importing any validity or value to any of said copyrights.

II. Add to Article II the following subsection:

(C) "Defendant's repertory" means those compositions, the right of public performance of which defendant has or hereafter shall have the right to license or sublicense.

III. Amend Article VII(C) to read as follows (adding the underscored section to the already existing language):

Defendant shall include In all contracts which it tenders to writers, publishers and music users relating to the licensing of performance rights a clause requiring the parties to submit to arbitration in the City, County and State of New York under the then prevailing rules of the American Arbitration Association, all disputes of any kind, nature or description in connection with the terms and conditions of such contracts or arising out of the performance thereof or based upon an alleged breach thereof, *except that in all contracts tendered by defendant to music users, the clause requiring the parties to submit to arbitration will exclude disputes that are cognizable by the Court pursuant to Article XIV hereof.*

IV. Amend Article IX(A) to read as follows (adding the underscored section to the already existing language):

Defendant shall not license the public performance of any musical composition or compositions except on a basis whereby, insofar as

network broadcasting by a regularly constituted network *so requesting* is concerned, the issuance of a single license, authorizing the fixing of a single license fee for such performance by network broadcasting, shall permit the simultaneous broadcasting of such performance by all stations on the network which shall broadcast such performance, without requiring separate licenses for such several stations for such performance.

V. Add to Article XIII the following language at the end thereof:

To best preserve the independent conduct of defendant's music licensing activities, the jurisdiction retained by this Court over this Final Judgment shall be exercised by a Judge of this Court other than one to whom has been assigned any action in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization (e.g., ASCAP) other than defendant. No reference or assignment of any issue or matter under this Final Judgment shall be made to a Magistrate Judge or Master to whom has been referred or assigned any pending issue or matter in which any music performing rights licensing organization other than defendant as to which this Court has entered judgment retaining jurisdiction, (e.g., ASCAP) is a party.

AND IT IS FURTHER ORDERED, ADJUDGED and DECREED that with respect to any music user heretofore licensed by defendant the license agreement of which expressly provides for determination by this Court of reasonable license fees or other terms for any period covered by such license, either defendant or such music user may apply to this Court for such determination provided that such license agreement provision has not otherwise expired.

B. **The BMI Decree**

26. BMI's Consent Decree provides as relevant here:

    VIII.

    (A) Defendant shall not enter into, recognize as valid or perform any performing rights license agreement which shall result in discriminating in rates or terms between licensees similarly situated; provided, however, that differentials based upon applicable business factors which justify different rates or terms shall not be considered discrimination within the meaning of this section; and provided further that nothing contained in this section shall prevent changes in rates or terms from time to time

by reason of changing conditions affecting the market for or marketability of performing rights.

X.

(A) Defendant shall not assert or exercise any right or power restrict from public performance by any licensee of defendant any copyrighted musical composition in order to exact additional consideration for the performance thereof, or for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; provided, however, that nothing in this paragraph shall prevent defendant from restricting performances of a musical composition in order reasonably to protect the work against indiscriminate performances or the value of the public performance rights therein or to protect the dramatic performing rights therein, or, as may be reasonably necessary in connection with any claim or litigation involving the performance rights in any such composition.

(B) Defendant, during the term of any license agreements any class of licensees, shall not make any voluntary reductions in the fees payable under any such agreements, provided, however, that with nothing herein shall prevent defendant from lowering any fees or rates to any or all classes of licensees in response to changing conditions affecting the value or marketability of its catalogue to such class or classes, or where necessary to meet competition.

XIV.

(A) Subject to all provisions of this Final Judgment, defendant shall, within ninety (90) days of its receipt of a written application from an applicant for a license for the right of public performance of any, some or all of the compositions in defendant's repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when defendant advises the applicant of the fee which it deems reasonable, the applicant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall, upon receipt of notice of the filing of such application, promptly give notice thereof to the Assistant Attorney General in charge of the Antitrust Division. If the parties are unable to agree upon a reasonable fee within ninety (90) days from the date when defendant advises the applicant of

the fee which it deems reasonable and no such filing by applicant for the determination of a reasonable fee for the license requested is pending, then defendant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall promptly give notice of its filing of such application to the Assistant Attorney General in charge of the Antitrust Division. In any such proceeding, defendant shall have the burden of proof to establish the reasonableness of the fee requested by it. Should defendant not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence. Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the compositions in defendant's repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding.

(B) When an applicant has the right to perform any compositions in defendant's repertory pending the completion of any negotiations or proceedings provided for in Subsection (A) hereof, either the applicant or defendant may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee. It is the purpose of this provision that an interim fee be determined promptly, and without prejudice as to the final determination of what constitutes a reasonable fee. It is further intended that interim fee proceedings be completed within 120 days of the date when application is made to fix an interim fee, subject to extension at the request of defendant or the applicant only in the interest of justice for good cause shown. If the Court fixes such interim fee, defendant shall then issue and the applicant shall accept a license providing for the payment of a fee at such interim rate from the date the applicant requested a license. If the applicant fails to accept such license or fails to pay the interim fee in accordance therewith, such failure shall be ground for the dismissal of its application. Where an interim license has been issued pursuant to this Subsection (B), the reasonable fee finally determined by this Court shall be retroactive to the date the applicant requested a license;

(C) When a reasonable fee has been finally determined by this Court, defendant shall be required to offer a license at a comparable fee to all other applicants similarly situated who shall thereafter request a license of defendant, but any license agreement which has been executed without any Court

>     determination between defendant and another applicant similarly situated prior to such determination by the Court shall not be deemed to be in any way affected or already such determination for the term of such license agreement.

27. This action alleges that ASCAP's and BMI's business practices described herein deviated substantially from the standards of the Consent Decrees to which they respectively agreed.

### C. Defendants' Pricing Practices

28. ASCAP and BMI have created different fees and licensing arrangements with different business categories, including but not limited to restaurants, coffee shops, fitness clubs, hotels, campgrounds, hospitals, bars, nightclubs, and Adult Entertainment Establishments ("AEE").

29. The Defendants have segregated music playing venues into AEEs and restaurants or bars and similar establishments ("RNB") although each uses the exact same licenses in the exact same way.

30. ASCAP's RBN license has categories for "use of music in your business" and has a category or "Recorded Music" under which there is a subcategory for "Live Music is not used . . . $4.55" per occupant and a further $2.64 if there is an "admission or cover charge."

31. An "add-on" on the ASCAP RBN menu is "Enhancements to Recorded Music . . . $2.64" per occupant. ASCAP defies "Enhancements" as ". . . added features to recorded music such as, but not limited to, karaoke, DJs, emcees, dancing, shows, acts or games."

32. Thus an RBN which puts on dancing girls like AEEs will pay approximately 50% of what ASCAP charges to AEEs. Moreover if an RBN venue can accommodate 2000 occupants, its per occupant charge will be approximately $3.50 per occupant given that ASCAP caps RBNs "occupancy" for license fee calculations at 1,000.

33. Furthermore, AEEs are charged license fees based on "total allowable occupancy under the local fire or similar regulations" while RBNs "occupancy" for rater purposes in capped at 1,000.

34. Thus AEEs' "occupancy" is not capped for rate purposes. Accordingly an AEE with 2000 person occupancy can pay an average of $14.00 per while an RBN can pay $1.72 per.

35. Thus, RBNs are offered rates per occupant as low as $1.72 per occupant, one-tenth of AEEs.

36. BMI's posted rate for 2025-2026 for "Adult Entertainment Establishments" is $1,240.00 plus $16.16 per occupant. For the "Eating & Drinking Establishments" category, BMI posted rates are on a per occupant basis only and the fees are $3.90 per occupant if there is "recorded music" plus $2.50 per occupant if there is an "admission or cover charge" for a total per occupant fee of $6.40 compared to the AEE category charge of $16.15 per occupant plus $1,240.00.

37. There appears to be no economic justification for the disparate pricing of AEE and RBN licenses by ASCAP and/or BMI.

38. Music licensing company GMR charges adult entertainment clubs $8 per occupant and nightclubs $9 per occupant.

39. The fourth music licensing company SESAC does not have a separate "adult entertainment" category in their rate formulation which is based upon occupancy, hours of operation, and cover charge.

40. Petitioner and all AEEs are billed on a scale at much higher rates than other businesses including RNBs by ASCAP and/or BMI.

16

41.     Respondents charge Petitioner a higher music licensing fee than any other business or industry.

42.     Petitioner is entitled to have a reasonable rate set by this Court. ASCAP and BMI shall have the burden of proof to establish the reasonableness of the fee requested by it. ASCAP Decree, § IX(B); BMI Decree, § IXV(A). If ASCAP and BMI do "not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence." ASCAP Decree, § IX(D); BMI Decree, § XIV(A).

43.     To determine a reasonable fee, a court must "determine the fair market value of a blanket license for the public performance of music." *In re Pandora Media, Inc.,* 6 F. Supp. 3d 317, 353 (S.D.N.Y. 2014), *aff'd* 785 F.3d 73 (2d Cir. 2015). "In so doing, the rate-setting court must take into account the fact that [the PROs], as a monopolist, exercises market-distorting power in negotiations for the use of its music." *Id.* Because "there is no competitive market in music rights," fair market value is a "hypothetical" matter. *ASCAP v. Showtime/The Movie Channel,* 912 F.2d 563, 577 (2d Cir. 1990). But here there is a "fair market value" benchmark in the form of license fees charged to similar establishments such as petitioners, which are not however, artificially categorized as "adult entertainment."

44.     Club Omaha further requests that the fees set by the Court be made retroactive to May 15, 2018, for ASCAP and June 1, 2018, for BMI pursuant to § IX(A) of the ASCAP Decree and § XIV(B) of the BMI Decree.

WHEREFORE, Club Omaha requests that the Court determine reasonable final fees and terms for music licenses now held by Club Omaha and such other and further relief which may be appropriate.

Petitioner demands a trial by jury of all issues so triable.

Dated: November 3, 2025

                                       **SQUITIERI & FEARON, LLP**


By:_____
     Lee Squitieri
205 Hudson Street, 7th Floor
New York, New York 10013
(212) 421-6492
lee@sfclasslaw.com


**EVAN SPENCER LAW, PLLC**
Evan Spencer
305 Broadway, 7th Floor
New York, New York 10007
(917) 547-4665
Evan@evanspencerlaw.com

Attorneys for Petitioner

18