**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H&S CLUB OMAHA, INC., | 25-civ-9147 |
| Petitioner, | **SECOND AMENDED PETITION OF H&S CLUB OMAHA, INC. FOR THE DETERMINATION OF REASONABLE FINAL LICENSE FEES** |
| v. | |
| BROADCAST MUSIC, INC., | |
| Respondent. | |

**SECOND AMENDED PETITION OF H&S CLUB OMAHA, INC. FOR THE
DETERMINATION OF REASONABLE FINAL LICENSE FEES**

1.      Petitioner H&S Club Omaha, Inc. ("Club Omaha") is a for-profit, Nebraska corporation that is in the adult entertainment business, specifically offering live performances by dancers while recorded music is played. The Respondent in this action is one of the two largest performing rights organizations ("PROs") in the United States: Broadcast Music, Inc. ("BMI") the other being American Society of Composers, Authors and Publishers ("ASCAP"). Each of ASCAP and BMI are subject to antitrust consent decrees entered in this judicial district stemming from their pooling of interests in vast amounts of copyrighted musical works for which they set prices. Club Omaha files this Second Amended Petition pursuant to this Court's Order dated March 17, 2026 (ECF No. 29) and § XIV of the BMI consent decree, for the determination of reasonable license fees and terms from BMI applicable to Club Omaha's use of compositions from BMI repertories (the "Rate Court Petition").

**INTRODUCTION**

2.      Respondent BMI entered into a consent decree with the Department of Justice in 1966, which has since been amended. *United States v. Broad. Music, Inc.,* 1966 Trade Cas. (CCH) ¶¶ 71,941, 83,323 (S.D.N.Y. 1966), *amended by* No. 64-civ-3787, 1994 WL 901652, at *1

1

(S.D.N.Y. Nov. 18, 1994) (1996-1 Trade Cas. (CCH) ¶ 71,378) (the "BMI Decree"). The BMI Decree restricts BMI's conduct and entitles entities making public performances of the BMI repertory to seek a judicial determination of reasonable BMI license fees under § XIV of the BMI Decree.

3.     Petitioner Club Omaha is a long time licensee of both ASCAP and BMI for the license to play units established from each PRO's respective repertoires. Club Omaha has recently sought to negotiate new fee licenses with both ASCAP and BMI. By this Petition, Club Omaha seeks a determination of reasonable license rates and terms against BMI for its repertories. Specifically, Club Omaha seeks reasonable rates and terms for "Music License" from BMI for the one year term commencing June 1, 2026 and renewals thereof. The license requested is to allow public performances of all BMI-affiliated musical compositions for which a BMI license is required for establishments such as Club Omaha at the licensed premises.

### PARTIES

4.     Club Omaha a for-profit corporation existing under the laws of Nebraska, with a principal office address of 2607 S. 120th Street, Omaha, Nebraska. Club Omaha is a live performance venue featuring female dancers who dance while recorded music is being played.

5.     BMI is a Delaware corporation operating as a music PRO on a non-profit-making basis that claims to license the musical works of approximately 1.2 million composers, songwriters, and publisher affiliates (with a repertory including more than 18.7 million musical works),[1] with its principal office located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

---

[1] *BMI Member FAQs,* BMI, https://www.bmi.com/faq/category/about.

## JURISDICTION

6.      This Court has jurisdiction under 28 U.S.C. § 1331 and § 1337 because the proceedings that gave rise to each of the ASCAP Decree and the BMI Decree were brought pursuant to federal antitrust laws. *See, e.g., ASCAP,* 2001 WL 1589999, at *1 ("This Court has jurisdiction of the subject matter hereof and of all parties hereto. The Complaint states a claim upon which relief may be granted against ASCAP under Section 1 of the Sherman Act, 15 U.S.C. § 1."); *see also BMI,* No. 64-Civ-3787, at *1 (noting "[t]his Court has jurisdiction of the subject matter of this action and of the parties . . . under Sections 1 and 2 of the Act of Congress of July 2, 1890").

7.      Likewise, under § XIV of the BMI Decree, this Court has continuing jurisdiction over BMI to determine reasonable license fees and terms governing the public performance of musical works in the BMI repertory by music users such as Club Omaha. Club Omaha invokes that jurisdiction in seeking a determination of reasonable BMI rates and terms for licenses.

8.      Before the Music Modernization Act (Pub. L. 115-264, title I, § 104, Oct. 11, 2018, 132 Stat. 3726) (the "MMA") was enacted in 2018, petitions to determine rates and terms under each of the ASCAP Decree and BMI Decree were required to be filed in the Southern District of New York and referred to the Judge having jurisdiction over the ASCAP Decree and BMI Decree, respectively. In practice, therefore, Judge Denise Cote handled petitions involving ASCAP, and Judge Louis Stanton handled petitions involving BMI.

9.      The MMA changed the assignment system for ASCAP and BMI "Rate Court" petitions. Rather than automatically assigning petitions to Judge Cote and Judge Stanton, the new law specifies that each rate court petition "shall be . . . randomly assigned to a judge" in the Southern District of New York. 28 U.S.C. § 137(b). The law further prohibits assigning a petition

to "a judge to whom continuing jurisdiction over any performing rights society consent decree is assigned or has previously been assigned" (in other words, Judges Cote and Stanton). *Id.*

10.    In accordance with these MMA provisions, Club Omaha files this Rate Court Petition against BMI. Under the MMA, Club Omaha's application cannot be assigned to Judge Cote or Judge Stanton or the Judge to whom the ASCAP case will be assigned. *Id.* But any other judge is eligible, other than "a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application." *(id.)*

## FACTS PERTINENT TO THE PETITION

11.    Club Omaha has been a BMI licensee since June 1, 2018 with the initial one year term renewing annually. BMI attempted to collect licensing fees from two separate entities at the same address occupied by Petitioner, when the business with account number 81153062 (which is not petitioners account number) had long since vacated the property.

12.    BMI's current annual rate to Club Omaha is $4,457.50 consisting of a minimum fee plus an additional amount based on additional occupants.

13.    Petitioner's counsel contacted BMI several times prior to filing this action, requesting a reasonable explanation for their posted rates for adult entertainment establishment. A very specific request for a new license was forwarded in writing to BMI on June 28, 2023.

14.    BMI has not, to date, proffered any specific fee explanation for the fees charged Club Omaha for the License Terms.

15.    Club Omaha is and has been since at least 2023, unwilling to pay the stated fee for the artificial class of establishment which BMI has designated H&S as "adult entertainment." Club Omaha and BMI have been unable to reach an agreement concerning reasonable fees for the

licenses to the BMI repertory requested by Club Omaha. It has been more than 60 days since Club Omaha provided BMI with its written request for a license under XIV(A) of the BMI Decree.

## BACKGROUND

16.    Respondent was investigated by the Department of Justice in the 1930's and in 1942 ASCAP entered into a Consent Decree which has been repeatedly modified, revised and amended the latest as of June 11, 2001 and BMI entered into a Consent Decree which was amended as of 1994 and the Court has maintained continuing jurisdiction.

**A.    The BMI Decree**

17.    BMI's Consent Decree provides as relevant here:

VIII.

(A) Defendant shall not enter into, recognize as valid or perform any performing rights license agreement which shall result in discriminating in rates or terms between licensees similarly situated; provided, however, that differentials based upon applicable business factors which justify different rates or terms shall not be considered discrimination within the meaning of this section; and provided further that nothing contained in this section shall prevent changes in rates or terms from time to time by reason of changing conditions affecting the market for or marketability of performing rights.

X.

(A) Defendant shall not assert or exercise any right or power restrict from public performance by any licensee of defendant any copyrighted musical composition in order to exact additional consideration for the performance thereof, or for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; provided, however, that nothing in this paragraph shall prevent defendant from restricting performances of a musical composition in order reasonably to protect the work against indiscriminate performances or the value of the public performance rights therein or to protect the dramatic performing rights therein, or, as may be reasonably necessary in connection with any claim or

5

litigation involving the performance rights in any such composition.

(B) Defendant, during the term of any license agreements any class of licensees, shall not make any voluntary reductions in the fees payable under any such agreements, provided, however, that with nothing herein shall prevent defendant from lowering any fees or rates to any or all classes of licensees in response to changing conditions affecting the value or marketability of its catalogue to such class or classes, or where necessary to meet competition.

XIV.

(A) Subject to all provisions of this Final Judgment, defendant shall, within ninety (90) days of its receipt of a written application from an applicant for a license for the right of public performance of any, some or all of the compositions in defendant's repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when defendant advises the applicant of the fee which it deems reasonable, the applicant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall, upon receipt of notice of the filing of such application, promptly give notice thereof to the Assistant Attorney General in charge of the Antitrust Division. If the parties are unable to agree upon a reasonable fee within ninety (90) days from the date when defendant advises the applicant of the fee which it deems reasonable and no such filing by applicant for the determination of a reasonable fee for the license requested is pending, then defendant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall promptly give notice of its filing of such application to the Assistant Attorney General in charge of the Antitrust Division. In any such proceeding, defendant shall have the burden of proof to establish the reasonableness of the fee requested by it. Should defendant not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence. Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the compositions in defendant's repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding.

6

(B) When an applicant has the right to perform any compositions in defendant's repertory pending the completion of any negotiations or proceedings provided for in Subsection (A) hereof, either the applicant or defendant may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee. It is the purpose of this provision that an interim fee be determined promptly, and without prejudice as to the final determination of what constitutes a reasonable fee. It is further intended that interim fee proceedings be completed within 120 days of the date when application is made to fix an interim fee, subject to extension at the request of defendant or the applicant only in the interest of justice for good cause shown. If the Court fixes such interim fee, defendant shall then issue and the applicant shall accept a license providing for the payment of a fee at such interim rate from the date the applicant requested a license. If the applicant fails to accept such license or fails to pay the interim fee in accordance therewith, such failure shall be ground for the dismissal of its application. Where an interim license has been issued pursuant to this Subsection (B), the reasonable fee finally determined by this Court shall be retroactive to the date the applicant requested a license;

(C) When a reasonable fee has been finally determined by this Court, defendant shall be required to offer a license at a comparable fee to all other applicants similarly situated who shall thereafter request a license of defendant, but any license agreement which has been executed without any Court determination between defendant and another applicant similarly situated prior to such determination by the Court shall not be deemed to be in any way affected or already such determination for the term of such license agreement.

18.    This action alleges that BMI's business practices described herein deviated substantially from the standards of the Consent Decree to which it agreed.

B.    **Defendants' Pricing Practices**

19.    BMI has created different fees and licensing arrangements with different business categories, including but not limited to restaurants, coffee shops, fitness clubs, hotels,

campgrounds, hospitals, bars, nightclubs, and, as relevant here, Adult Entertainment Establishments ("AEE").

20.     BMI has segregated music playing venues into AEEs and, separately, for restaurants or bars and similar establishments ("RNB") although each uses the exact same licenses in the exact same way.

21.     Prior to June 28, 2023, Petitioner, through Evan Spencer and Shane Harrington, had communications with Respondent through, *inter alia*, Anthony Adewumi. After exchanging their relative positions, the parties were still not in agreement on either a rate nor the legitimacy of the differential in rates between AEEs and other similarly situated licensees.

22.     BMI's posted rate for 2025-2026 for "Adult Entertainment Establishments" is $1,240.00 plus $16.16 per occupant. For the "Eating & Drinking Establishments" category, BMI posted rates are on a per occupant basis only and the fees are $3.90 per occupant if there is "recorded music" plus $2.50 per occupant if there is an "admission or cover charge" for a total per occupant fee of $6.40 compared to the AEE category charge of $16.15 per occupant plus $1,240.00.

23.     BMI's license rate for H&S is discriminatory.

24.     BMI bases the differential on some spacious "intensity" argument. Live Music isn't part of a performance, it is the entire performance, whereas music is only a small part of the performance for live dancers. Dancers can perform without music, but Live Music can't play without live music.

25.     As a further example of the discriminatory nature of the differential, BMI only charges $2.20 per occupant for "Dancing to Live or Recorded Music." Occupants of a nightclub cannot dance without music, so it is no less intensive than music played at a strip club. Nightclubs

with dancing would not exist without music, which is typically played by a DJ. Patrons dance to the music and choose venues to patronize based upon the type of music an establishment plays. Another example is Karaoke, for which BMI charges $4.00 per occupant. Once again, Karaoke is not less "intense" than a strip club because without the blanket music license, there is not Karaoke at all.

26.     Even crediting, solely for the sake of argument, without conceding anything, the intensity argument, it still does not justify a 700% greater fee for AEEs over bars and nightclubs.

27.     The consent decree with the Department of Justice permits BMI and ASCAP to operate with blanket music licenses, but it does not allow discriminatory overcharging among similarly situated licensees.

28.     There appears to be no economic justification for the disparate pricing of AEE and RBN licenses by BMI.

29.     Music licensing company GMR charges adult entertainment clubs $8 per occupant and nightclubs $9 per occupant.

30.     The fourth music licensing company SESAC does not have a separate "adult entertainment" category in their rate formulation which is based upon occupancy, hours of operation, and cover charge.

31.     Petitioner and all AEEs are billed on a scale at much higher rates than other businesses including RNBs by BMI.

32.     Respondent charges Petitioner a higher music licensing fee than any other business or industry.

33.     Petitioner is entitled to have a reasonable rate set by this Court. BMI shall have the burden of proof to establish the reasonableness of the fee requested by it. BMI Decree, § IXV(A).

If BMI does "not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence." BMI Decree, § XIV(A).

34.    To determine a reasonable fee, a court must "determine the fair market value of a blanket license for the public performance of music." *In re Pandora Media, Inc.,* 6 F. Supp. 3d 317, 353 (S.D.N.Y. 2014), *aff'd* 785 F.3d 73 (2d Cir. 2015). "In so doing, the rate-setting court must take into account the fact that [the PROs], as a monopolist, exercises market-distorting power in negotiations for the use of its music." *Id.* Because "there is no competitive market in music rights," fair market value is a "hypothetical" matter. *ASCAP v. Showtime/The Movie Channel,* 912 F.2d 563, 577 (2d Cir. 1990). But here there is a "fair market value" benchmark in the form of license fees charged to similar establishments such as petitioners, which are not however, artificially categorized as "adult entertainment."

35.    Club Omaha further requests that the fees set by the Court be made retroactive to June 1, 2018, for BMI pursuant to§ IX(A) of the § XIV(B) of the BMI Decree.

WHEREFORE, Club Omaha requests that the Court determine reasonable final fees and terms for music licenses now held by Club Omaha and such other and further relief which may be appropriate.

Petitioner demands a trial by jury of all issues so triable.

Dated: March 24, 2026

                                        SQUITIERI & FEARON, LLP


                                        By:*/s/ Lee Squitieri*
                                             Lee Squitieri
                                        205 Hudson Street, 7th Floor
                                        New York, New York 10013
                                        (212) 421-6492
                                        lee@sfclasslaw.com


10

**EVAN SPENCER LAW, PLLC**
Evan Spencer
305 Broadway, 7th Floor
New York, New York 10007
(917) 547-4665
Evan@evanspencerlaw.com

Attorneys for Petitioner

11