USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/24/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

H&S CLUB OMAHA, INC.,

Petitioner,

- against -

BROADCAST MUSIC, INC.,

Respondent.

**25 Civ. 9147 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Petitioner H&S Club Omaha, Inc. ("Club Omaha") brings this action against Respondent Broadcast Music, Inc. ("BMI"), seeking a judicial determination of reasonable license fees and terms for Club Omaha's use of music in BMI's repertory (the "Rate Court Petition"). Club Omaha alleges in its Second Amended Petition ("Second Amended Petition" or "SAP", Dkt. No. 30) that BMI uses a separate rate schedule to charge adult entertainment establishments ("AEEs") substantially higher fees than the rates BMI charges comparable bars, restaurants, and nightclubs, without adequate business justification. Club Omaha alleges that practice violates Section VIII(A) of BMI's consent decree with the Department of Justice, entered in 1966 (the "Consent Decree").

BMI seeks dismissal of the SAP on two grounds: (1) the Consent Decree does not authorize the Court to retroactively revise an executed license agreement; and (2) Club Omaha has

failed to satisfy the procedural requirements in Section XIV(A) of the Consent Decree. The Court, with the parties' consent, (see Dkt. Nos. 33, 34), construes BMI's pre-motion letters and subsequent submissions as a motion to dismiss the SAP pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] For the reasons set forth below, the motion to dismiss is **GRANTED.**

## I. BACKGROUND

### A. FACTUAL BACKGROUND[2]

Petitioner Club Omaha is a Nebraska corporation that operates an adult entertainment venue featuring live performances accompanied by recorded music. (See SAP ¶¶ 1, 4.) Respondent BMI is a Delaware corporation that operates as a performing rights organization ("PRO") and licenses musical compositions on behalf of approximately 1.2 million composers, songwriters, and publisher affiliates, managing a repertory of more than 18.7 million musical works. (See id. ¶¶ 1, 5.)

---

[1] See Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 53 (2d Cir. 2022) (requiring notice and consent from the parties in construing an exchange of letters as a motion to dismiss).

[2] The factual background, except as otherwise noted, derives from the Second Amended Petition, (see Dkt. No. 30), and the facts pleaded therein, which the Court accepts as true for the purpose of ruling on a motion to dismiss. See, e.g., Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)).

Club Omaha has been a licensee of BMI since June 1, 2018, pursuant to a one-year license agreement that renews annually (the "License Agreement"). (See id. ¶ 11.) Under BMI's current annual fee schedule, Club Omaha pays BMI $4,457.50 per year, consisting of a minimum fee plus an additional amount calculated based on the number of occupants present in the venue. (See id. ¶ 12.)

BMI operates subject to an antitrust consent decree it entered with the United States Department of Justice in 1966. (See id. ¶¶ 1, 2.) The Consent Decree prohibits BMI from "enter[ing] into, recogniz[ing] as valid or perform[ing] any performing rights license agreement" that discriminates in rates or terms among similarly situated licensees, unless the differential is justified by applicable business factors. (Id. ¶ 17 (quoting Consent Decree § VIII(A)).) The Consent Decree also permits BMI license applicants to seek judicial determination of reasonable license fees pursuant to Section XIV of the Consent Decree. (See id. ¶ 2.)

BMI maintains separate rate schedules for AEEs and for "Eating & Drinking Establishments," even though those establishments use music licenses in substantially similar ways. (See id. ¶¶ 19-20, 22.) For 2025-2026, BMI's posted rate for AEEs was $1,240.00, plus $16.16 per occupant. (See id. ¶ 22.) By contrast, BMI's posted rate for Eating &

Drinking Establishments is calculated solely on a per occupant basis, charging $3.90 per occupant for recorded music, plus $2.50 per occupant for establishments that charge an admission or cover fee, for a total of $6.40 per occupant. (See id.) BMI applies similarly lower rates to other categories of establishments, charging $2.20 per occupant for "Dancing to Live or Recorded Music" and $4.00 per occupant for karaoke. (See id. ¶ 25.) Club Omaha alleges that the AEE fee structure is discriminatory, resulting in fees approximately seven hundred percent (700%) higher than those charged to comparable businesses, and that BMI has offered no adequate economic justification for the differential. (See id. ¶¶ 26, 28.)

Before initiating this litigation, Club Omaha's counsel contacted BMI several times seeking an explanation for the higher rates charged to AEEs. (See id. ¶ 13) Club Omaha further alleges that, on June 28, 2023, it submitted a written request to BMI seeking a new license at a lower rate (the "June Club Omaha Email", Dkt. No. 36-2). (See id.) According to Club Omaha, BMI has not provided a specific explanation for the fees it charges to Club Omaha. (See id. ¶ 14.) Club Omaha alleges that, since at least 2023, it has been "unwilling" to pay the stated fee, arguing that the higher rates charged to AEEs lack economic justification. (See id.

¶ 15.) Club Omaha also alleges that more than sixty (60) days have elapsed since it submitted its written request to BMI, as required to invoke the Court's rate-setting jurisdiction under the Consent Decree. (See id. ¶¶ 15, 17.)

Club Omaha asks the Court to exercise its authority under the Consent Decree to determine reasonable license fees and terms applicable to its use of compositions in BMI's repertory, retroactively for the periods from 2023-2026, and for subsequent license renewals.

## B. PROCEDURAL HISTORY

### 1. Pre-Motion Letter Exchange

Consistent with the Court's Individual Practices, on February 20, 2026, BMI sent a pre-motion letter to Club Omaha previewing a motion to dismiss the Amended Petition ("Amended Petition", Dkt. No. 12), arguing that Club Omaha (1) failed to submit a written license application required to invoke the Court's rate-setting jurisdiction, and (2) could not seek retroactive modification of existing contracts. ("February BMI Letter", Dkt. No. 31-1.)

In response on March 4, 2026, Club Omaha contended that its June 28, 2023 email requesting a lower fee for AEEs satisfied Section XIV(A) of the Consent Decree and narrowed its requested relief to start on that date rather than June 1, 2018. (See "March Club Omaha Letter", Dkt. No. 31-2.) Over

BMI's opposition, (see Dkt. No. 28), the Court granted Club Omaha leave to file a Second Amended Petition. (See Dkt. No. 29.)

The parties exchanged further letters in April 2026 reiterating their positions: BMI maintained on April 6, 2026 that Club Omaha still failed to satisfy Section XIV(A) and could not alter binding contract rates, (see "April BMI Letter", Dkt. No. 31-3), and Club Omaha countered on April 8, 2026 that its email sufficed and retroactive relief was permitted under the Consent Decree. (See "April Club Omaha Letter", Dkt. No. 31-4.)[3]

On April 24, 2026, Club Omaha gave notice that it would terminate its annual license effective May 31, 2026, and requested a new, lower rate license for the period from June 1, 2026 through May 31, 2027. (See "Termination Letter", Dkt. No. 36-11.)

2. Motion Practice

After the pre-motion letter exchange failed to resolve the dispute, BMI moved to dismiss the SAP on April 17, 2026. (See "Motion", Dkt. No. 31.) On April 24, 2026, the Court set supplemental briefing, (see Dkt. No. 35), under which Club

[3] BMI further alleged that the SAP incorrectly listed the refund date as June 1, 2018, instead of June 28, 2023. (See April BMI Letter at 1.) Club Omaha conceded the error, confirming it intends only to seek a refund from the June 28, 2023 date. (See April Club Omaha Letter at 1.)

Omaha filed its opposition on May 7, 2026, (see "Opposition" or "Opp'n", Dkt. No. 36), and BMI filed its reply on May 21, 2026. (See "Reply", Dkt. No. 37.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 573-74 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit

Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). The Court must draw reasonable inferences in favor of the non-moving party. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

## III. DISCUSSION

First, the Court finds, under Section XIV(B) of the Consent Decree, the Court lacks authority to retroactively alter fees for the completed 2023-2026 license periods where Club Omaha renewed and performed a binding contract without obtaining an interim license. Second, the Court concludes, under Section XIV(A), Club Omaha cannot invoke the Court's rate-setting jurisdiction for 2023-2026, nor can its post-filing Termination Letter cure its failure to apply before seeking judicial relief for the 2026-2027 period. Thus, the Court grants BMI's Motion.

### A. RETROACTIVITY AND THE LICENSE AGREEMENT

First, BMI argues that the Consent Decree does not empower the Court to set aside final licenses or undo performed contracts. (See Motion at 1.) According to BMI, the License Agreement is a binding contract, and thus the Court

lacks authority to retroactively modify its terms. (See id.) Club Omaha counters that the Consent Decree permits the Court to impose new terms and fees retroactively. (See April Club Omaha Letter at 2.)

The Court agrees with BMI and will not rewrite the terms of a binding contractual agreement. See Broadcast Music, Inc. v. Pandora Media, Inc., 2013 WL 6697788, at *5 (S.D.N.Y. Dec. 19, 2013) (declining to retroactively alter "presently-existing licenses" as "[t]hey were legal when made"). Club Omaha relies on Section XIV(B) of the Consent Decree, which provides that "the reasonable fee finally determined by this Court shall be retroactive to the date the applicant requested a license." (April Club Omaha Letter at 2.) BMI responds that Club Omaha omits the qualifying language preceding that provision, which states, "[w]here an *interim license* has been issued pursuant to this Subsection (B)," then the Court shall apply the determined fee retroactively. (Motion at 2 n.4 (quoting Consent Decree § XIV(B))) (emphasis added.)

Here, Club Omaha has accepted and paid the annual licensing fees offered by BMI from 2018 through 2026. (See SAP ¶ 11; April BMI Letter at 3 n.5.) Even if the June Club Omaha Email constituted a "written application" for a new license under Section XIV(A), Club Omaha did not obtain an interim license pending the Court's determination of a

reasonable fee. (See Section XIV(B).) Instead, Club Omaha continued to renew the License Agreement and pay the applicable licensing fees after submitting its June 2023 "written application." (See April BMI Letter at 3 n.5.) The retroactivity provision in Section XIV(B) therefore does not provide a basis for the Court to revise the fees applicable to those completed license periods. See ESPN Enters., Inc. v. DISH Network L.L.C., 810 F. Supp. 3d 452, 457-58 (S.D.N.Y. 2025) ("[T]he Court can't rewrite the terms of the License...to fix any potential unfairness.").

Accordingly, the Court declines to retroactively determine a reasonable fee to the parties' binding License Agreement for the 2023-2026 license periods.

B. COMPLIANCE WITH ARTICLE XIV OF THE CONSENT DECREE

Second, BMI argues that Club Omaha has failed to satisfy the procedural requirements of Section XIV(A) of the Consent Decree to invoke this Court's rate-setting jurisdiction. (See Motion at 2-3.) Specifically, Section XIV(A) requires an applicant to submit a "written application" to BMI for "a license for the right of public performance of any, some or all of the compositions in defendant's repertory." (SAP ¶ 17 (quoting Section XIV(A)).)

1. <u>License Renewals for 2023-2026</u>

Club Omaha argues that the June 2023 Email satisfies the written application requirement because it provided BMI with notice that Club Omaha sought to renew its license for 2023-2024 at a lower rate. (<u>See</u> April Club Omaha Letter at 1.) Further, Club Omaha contends that, because the Consent Decree does not expressly define the term "written application," its informal notice should suffice. (<u>See</u> <u>id.</u>)

The Court need not decide whether the June Club Omaha Email satisfied the Consent Decree's written application requirement for the 2023-2026 license periods. Even assuming the email did, Club Omaha subsequently renewed its licenses for 2023-2024, 2024-2025, and 2025-2026, and continued to pay the fees set by BMI, rather than awaiting the Court's determination of a reasonable license fee. (<u>See</u> April BMI Letter at 3 n.5.) Club Omaha's assertion that it "pa[id] under protest[,]" (Opp'n at 1), does not alter the fact that it repeatedly renewed and performed the License Agreement while accepting its benefits. (<u>See</u> February BMI Letter at 2.)

2. <u>License Renewal for 2026-2027</u>

The 2026–2027 license period presents a separate issue. In its April 24, 2026 letter, Club Omaha notified BMI that it intended to terminate its annual license effective May 31, 2026, and requested a new license for the period from June 1,

2026 through May 31, 2027, at a lower rate. (See Termination Letter.)

Section XIV(A) of the Consent Decree provides that, following the submission of a written application for a license, an "applicant may forthwith apply to this Court for the determination of a reasonable fee." (SAP ¶ 17.) Thus, to invoke the Court's rate-setting authority with respect to the 2026-2027 license period, Club Omaha was required to submit its written application to BMI *before* seeking judicial intervention.

Club Omaha, however, submitted its April 24, 2026 request for a new license after filing the SAP. The Termination Letter therefore cannot cure Club Omaha's failure to submit a written application for the 2026–2027 license before commencing this action. The Court accordingly need not determine whether the Termination Letter otherwise satisfied the Consent Decree's written application requirement.

In sum, Club Omaha has likewise not established a basis for the Court to determine a reasonable license fee for the 2026–2027 period under Section XIV(A) of the Consent Decree.

## IV. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant Broadcast Music, Inc. to dismiss (Dkt. No. 31) the Second Amended Petition of

plaintiff H&S Club Omaha, Inc. (Dkt. No. 30) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED.**

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: 24 November 2026
New York, New York

Victor Marrero
U.S.D.J.